## LAWRENCE CLARK v. WALTER HOBART.[1]

May 10, 1929.

No. 27,269.

Norton & Norton, for appellant.

P. W. Viesselman and M. J. Timmons, for respondent.

[1] Reported in 225 N. W. 295.

Holt, J.

Defendant appeals from a money judgment.

The complaint alleged and the court found that plaintiff employed defendant, a licensed surveyor, "to survey and stake out lines and levels for the erection of a certain house to be built by plaintiff on his lot known and numbered as 1641 Washburn avenue south, Minneapolis, Minnesota, by the terms of which contract defendant agreed to establish the proper and most practical grade level and determine and stake out the most practical level for the foundation walls of said house; all in pursuance and according to certain plans and specifications furnished by the plaintiff to defendant. * * * That said plaintiff has duly performed all the conditions of said agreement on his part; and that the defendant failed to perform the conditions as required by the said contract, and that by reason thereof, and as a natural and proximate result of said failure of defendant to perform said contract, plaintiff has been damaged in the sum of $182.24."

These two findings were challenged as not sustained by a motion for a new trial, and are likewise assailed in this court.

The evidence is this in substance: Plaintiff owned the lot described in the findings. It is located in the hilly suburbs of Minneapolis adjacent to the Cedar Lake road, fronting west, is 43 or 44 feet wide and 200 feet long or deep. Plaintiff thus describes its contour: "Well, the lot is away above grade, and the front of the lot is, or was, rather, about four or five feet above the street grade and then it goes up on a side hill, kind of a double side hill, up sharply to the back corners." He estimated the rear or east end of the lot to be 50 feet higher than the front thereof. It also sloped down from the south line towards the north line.

Plaintiff had procured plans for the small bungalow or cottage he intended to erect on the lot and had them present when, in the first part of January, 1925, he, by appointment, met defendant to stake out the building upon the lot. The place for the foundation was staked out, and various levels were taken, plaintiff assisting. As

then laid out, conforming more to the front line of the lot than the side lines, the building covered .too much space for the size of the lot, so that the building inspector refused a permit. On March 25 or 26, 1925, defendant was again requested to stake out the building according to the former plans as modified by eliminating a side porch and placing the structure so as to conform to the side lines of the lot. At that time both plaintiff and the contractor who was to erect the building were present when defendant did the work. He drove a stake near the northeast corner of the building as staked out upon the ground, the top of which stake was to mark the height of the foundation wall. The contractor at once began the excavation and had erected one wall of the foundation when plaintiff concluded that the excavation was three feet too deep. The building was to have a garage in the basement with driveway to the street in front. The floor of the garage was left as excavated, but the rest of the basement was filled in two feet so that the basement is now nine feet high. This refilling and the additional height of the foundation walls and driveway retaining wall constitute the damages which plaintiff claimed, because the stake placed by defendant to show the height of the foundation was not placed as the alleged agreement required.

We fail to discover in the record any evidence of an agreement such as found by the court. Nothing is contained in the plans to indicate how high the basement floor or any other part of the structure was to be above the street grade in front; it merely provided that the basement was to be eight feet from the floor to the top of the foundation. It could not well have escaped the notice of both the owner and contractor to what extent the top of the foundation would go. with reference to the natural lay of the land if built up to a level with the top of the stake set by defendant to mark its height. There were no directions to defendant that that stake was to be at any certain height above the street grade. The proposition did not seem to have been even mentioned at either time defendant was at the lot. All saw the top of the stake as set and knew for what purpose, and there ought to have been no

difficulty in observing whether the foundation constructed to that height would come above or below the natural surface of the ground. Defendant was not informed to what extent, if any, plaintiff desired the lot graded, nor at what grade the driveway into the garage in the basement should be. Even as it now is left, the grade of the driveway is steep. Had there been any agreement or understanding that defendant was to place a stake to mark the top of the foundation a certain number of feet above the established street grade and he had failed to do so accurately, there would have been a breach of the contract of the employment. But no such case was made out. Neither the plans exhibited to defendant nor any conversation between the parties permit an inference of any agreement on the part of defendant to stake out "the proper and most practical grade level" for the house or "for the foundation" thereof. In our opinion the first finding made has no evidence to support it. That being so, there was no basis for damages or for finding that defendant has breached his agreement.

The judgment is reversed and a new trial granted.